THOMAS AND CATHARINE FITZGERALD *v.* ROBERT FERGUSON.

Where a person is injured by the carelessness of a slave, the lessee of the slave is the person first liable to respond in damages, under Article 2299 of the Code.

Where a slave occasions injury to any one by his negligence, and the lessee has not induced it by any want of vigilance or care on his part, the lessee may recover against the owner of the slave an indemnity for such damages as he may have been obliged to pay third parties.

C. F. was injured by the carelessness of a slave in driving a carriage ; the slave was hired to defendant, but the title was in B. Plaintiff obtained a judgment for damages, and B. abandoned the slave, who did not bring enough to satisfy plaintiff's judgment, and the balance was claimed from defendant—*Held :* that in the particular case, both the owner and the lessee were relieved by the abandonment. *By the Court :* Whether there may not be cases where the parties would not be permitted to relieve themselves from a responsibility by a surrender of the slave as in those cases where particular skill and experience are required, and an incompetent slave is employed as a workman, it is not necessary for us to determine.

Code 180, 181, 2300.

APPEAL from the Sixth District Court of New Orleans, *Cotton,* J.
*Cotton & Dorsey,* for plaintiffs. *Hunton & Bradford,* for defendant and appellant.

MERRICK, C. J. Robert Ferguson was the lessee of a slave, hired to him by *René H. Brunet,* in whom the legal title to the slave was vested, although *Brunet* held the slave for the benefit of some person in England, and hired out the slave as agent of such person.

While in *Ferguson's* employment, and driving a one horse carriage belonging to the defendant, the slave negligently and carelessly drove against the plain-

tiff, *Catharine Fitzgerald*, as she had alighted from an omnibus, and was crossing to the side-walk. The plaintiff was thrown down by the force with which she was struck by the horse, and she and her child were run over by two of the wheels of the vehicle, she being permanently injured, as testified by the physician.

The action is brought to recover damages for the injuries sustained by her.

*Brunet* is also made a defendant. The District Court gave judgment against the defendants *in solido* for one thousand dollars, and *Ferguson* has appealed. The defendant, *Brunet*, within three days after the decree, surrendered the slave in satisfaction of the judgment rendered against him, under an *ex parte* order of the Judge, who had pronounced the decree. Since the appeal has been taken in this case, the slave has been sold, and the proceeds are in the hands of the sheriff, awaiting the decision of this case by consent.

We think the proof of the injuries sustained by *Mrs. Fitzgerald* justified a judgment for some amount of damages. Whether for the exact amount rendered, it is unnecessary to inquire.

The questions therefore presented by the case are, is the lessee responsible for the act of the slave? If so, has he or the person injured any further recourse against the owner? And if he has, will the abandonment of the slave by the owner, relieve both from any further responsibility, or one only?

In considering these questions in their order, we remark that the employer is responsible for the negligence or carelessness of the workman or servant in his, the employer's, ordinary business, even though that servant or workman be free.

In the case before us, if the defendant, *Ferguson*, had employed a white person as his carriage driver, and the accident had occured under precisely the same circumstances, that is from mere carelessness, and without any wilful intention of doing injury on the part of the driver, he would have been responsible for the act. We can see no reason why, therefore, he should not be responsible in like manner when he employs a slave. In the case of an injury occasioned by the servant who is free, the party injured has his remedy against either the servant or employer. In the case of the slave, the first person to respond for the injury under Article 2299 of the Civil Code, would seem to be the person who has the slave immediately under his control, and who commands his services and obedience as master for the time being, and so it has been expressly ruled in the case of *Gaillardet* v. *Demaries*, 18 L. R., 492. In the 2d Annual, 406, in the case of *Collingsworth* v. *Covington*, it is said: That Article 2299 does not refer to slaves. This is true in the sense intended in that case, which was an action directly against the owner for the injury done by his slave to the plaintiff, his overseer. That case was correctly decided by Articles 180, 181 and 2300 of the Code, which alone were applicable. But when the suit is brought against the lessee of the slave, it may happen that the owner will not be liable at all, whilst the lessee ought to be held responsible for the whole damage done. Suppose, for instance, a slave is hired as a field hand, and the lessee makes him his carriage driver, or sets him at some mechanical employment, by which an injury is occasioned by his want of skill and negligence. Here it would be evidently unjust to hold the owner responsible, and it would be equally unjust to allow the party to escape who has occasioned the injury by setting at a difficult employment, a person manifestly incompetent. We think, therefore, the lessee must be held responsible.

If the person who does the injury is not the slave of the *lessee*, he is, as to the relation between them, in every sense of the word, a servant, which is not prevented by being the slave of another.

It is also apparent from what has just been said that the owner of the slave ought not to be held responsible for the merely negligent acts of his slave, unless the slave has been employed in business to which he has been accustomed, and for which he was hired. Where he is so employed and occasions an injury by his negligence, and the lessee has not induced it by any want of vigilance or care on his part, we think the lessee may recover against the owner of the slave, an indemnity for such damages, as he may have been obliged to pay third parties. In the case of a free servant, the employers could recover against the servant for such damages as he had been obliged to pay to a third person on account of the carelessness of the servant, and we can see no good reason why the owner, who hires out his slave for a particular employment, should not be responsible if he does not possess the requisite skill or intelligence for that employment.

The parties, lessee or lessor, stand in such a case as to third parties as defendant and warrantor.

Now, in the case before us, had *Ferguson* been the owner of the slave, he would have had the right to abandon him in satisfaction of the judgment, within three days after its rendition. It must follow that *Brunet*, the legal owner, has the like right to relieve himself from his responsibility as warrantor, for the acts of his slave.

The next question is, does the surrender of the slave, release *Ferguson* as well as *Brunet?* The reason to doubt is that *Ferguson* is not the owner of the slave, and had it been a white servant who had occasioned the injury, the employer, in case of responsibility, would have been bound absolutely for any amount.

On the other hand it seems inequitable that the master should be able to free himself from responsibility by a surrender of the slave, and that the lessee who has only a temporary interest in the services of the slave should be held, as in this case, for two or three times the value of the slave by the surrender of which the owners had been released.

The *actio noxalis* for the injuries done by slaves, and *actio de pauperie* for injuries done by animals were both *quasi* actions *in rem*. Omnis autem noxalis actio caput sequitur. Nam si servus tuus noxam commiserit: quamdiu in tua potestate sit, tecum est actio. Si autem in alterius potestatem pervenerit; cum illo incipit actio esse. . At si manumissus fuerit; directo ipse tenetur et extinguitur noxae deditio. Ex diverso, quoque directa actio noxalis esse incipit. Nam si liber homo noxiam commiserit et is servus tuus esse coeperit (quod quibusdam casibus effici primo libro tradimus) incipit tecum esse noxalis actio quae ante directa fuisiet. Just. 4, 8, § 5. 7 L. R., 590.

We think so much of this character of the original noxal action may be supposed to remain as to relieve, in the particular case before us, both the owner and lessee by a surrender of the slave.

Whether there may not be cases where the parties would not be permitted to relieve themselves from responsibility by a surrender of the slave, as in those cases where particular skill and experience are required, and an incompetent slave is employed as a workman, it is not necessary for us to determine. The fact that the slave had taken two other negroes in the vehicle to ride with him

accounts for his want of attention in driving, at. the time of the accident. There is nothing in the record to show that he was incompetent as a driver, or that he was employed about a business for which he was not hired.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment appealed from be amended by adding thereto the condition that said sum of one thousand dollars and costs, shall be discharged and satisfied by the delivery or surrender of the slave *Davis*, or his proceeds to the sheriff within three days after the judgment of this court shall be ordered to be executed by the lower court, of which notice shall be given the defendants ; and it is further ordered that the judgment so amended be affirmed, the plaintiff and appellee paying the cost of the appeal.